**WAL–MART STORES, INC., Appellant,**

v.

**Terri SHOLL, Appellee.**

**No. 13–97–411–CV.**

Court of Appeals of Texas,
Corpus Christi.

March 25, 1999.

Rehearing Overruled May 13, 1999.

Alan Neil Magenheim, J. Preston Wrotenbery, Kevin D. Jewell, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, Houston, for appellant.

Gordon E. Davenport, Jr., Davenport Law Firm, Alvin, for appellee.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

Wal–Mart Stores, Inc. appeals the judgment of the trial court awarding Terri Sholl $647,430.32. In six points of error, Wal–Mart challenges: (1) the admissibility of Sholl's experts' testimony, (2) the legal and factual sufficiency of the evidence establishing proximate cause, actual notice, and supporting the jury's damage award, (3) the factual sufficiency of the evidence to support the jury's finding of negligence, and (4) the trial court's predicating the damages question on. an affirmative response to the liability issue because doing so informed the jury of the effect of its answer. We affirm.

While the facts surrounding this case are in dispute, apparently, on December 6, 1992, Terri Sholl entered a Wal–Mart store in Pearland, Texas, where she proceeded to the paint department. Ignoring a sign instructing customers to ask for assistance with merchandise on the top shelf, she reached up to the top shelf (riser) and turned a one gallon can of paint to read the label. Upon doing so, several other cans of paint fell from the riser striking and injuring Sholl. Sholl then

sued Wal–Mart alleging negligence and gross negligence. The trial court granted Wal–Mart's instructed verdict on the gross negligence claim and refused to submit an instruction on *res ipsa loquitur* and negligence per se. The negligence claim was submitted to the jury, which found Wal–Mart 90% at fault.

Wal–Mart contends in point of error one that the trial court abused its discretion by allowing Dr. Vaughn Adams and Robert Carr, Sholl's experts, to testify because they did not meet the standards for expert opinion testimony under *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex.1995). Specifically, Wal–Mart asserts that neither Adams nor Carr were qualified to testify as experts, and that each individual's testimony was neither relevant nor reliable.

■ Adams is a consulting engineer with a Ph.D. in industrial engineering from Texas A & M University where his major course of study was safety engineering. Safety engineering is that branch of industrial engineering dealing with identification, evaluation, and control of hazardous conditions. His doctoral dissertation was an epidemiological study of accident investigations whereby he studied approximately 200,000 accidents and other failure events comparing the conditions under which such failures occurred. Additionally, Adams has a masters degree from Arizona State University in human factors engineering. Human factors engineers determine the effect that the human element plays in designing premises or products; taking into account related behavioral and life sciences. Adams has been well published in his field of expertise and belongs to numerous industry organizations, such as the American National Standards Institute (ANSI). He has also taught at Texas A & M and Arizona State Universities.

After the trial court conducted its pretrial *Robinson* hearing, it held Adams was qualified to testify on the limited issue of the kinetic energy possessed by a falling object (paint can) from various heights. On direct examination, Adams testified that the force associated with a falling paint can ranges from 1936 to 5816 p.s.i. and is sufficient to cause head injuries. Additionally, he testified that based upon his knowledge of safety standards and his review of Wal–Mart's accident reports, Wal–Mart failed to meet the standard of care necessary to adequately prevent future accidents. He did not testify that the force of the falling paint can in this case was sufficient to cause Sholl's injuries, nor that Sholl's injuries were caused by a falling paint can. However, on redirect, Adams further testified that: (1) Wal–Mart's stacking of the paint cans led to unstable conditions which allowed the paint cans to fall, (2) "an individual searching for merchandise on a shelf slightly above head height and within arms reach will predictably rotate the merchandise, (*i.e.* paint can) to read the label to determine if that's the product sought or one they're wanting to purchase," (3) the unguarded display hook that allegedly caught on Ms. Sholl's jacket presented an unsafe condition that Adams suggested predictably would lead to entrapment and impalement events, and (4) having testified that the shelf was unstable, he explained that it was irrelevant what ultimately caused the paint cans to fall—whether somebody pushed an object from the other side of the shelves, whether somebody bumped up against it, whether Sholl bumped it, or whether Sholl snagged her clothes on a hook and bumped it—because it was foreseeable that the paint cans would fall and injure someone.

While Adams's testimony went well beyond the limits imposed by the trial court during the *Robinson* admissibility hearing, Wal–Mart failed to object on this ground, or on the ground that it did not satisfy *Robinson*.[1] Having failed to object to im-

---

1. Wal–Mart's only objection at trial was that Sholl's redirect of Adams exceeded the scope of cross-examination. This objection was properly overruled by the trial court.

proper expert testimony, Wal–Mart may not now complain of such on appeal. Tex. R.App. P. 33.1.

We next address the admissibility of Carr's testimony. Carr is a licensed architect who holds an NCARB certificate and has had his own architectural firm for over twenty years. While he has never designed retail shelving, he has designed several retail stores such as Payless Cashways and Ace Hardware, where he was responsible for the specifications and layout of the shelving. Additionally, he studied engineering for two years.

■ Carr's testimony was limited at the pre-trial *Robinson* hearing to the structural design and load-leveling aspects of shelving. At trial, Carr testified that placing heavier objects above head height with lighter objects in the center of the shelves creates an unstable shelf because the center of gravity is too high. He further testified that an "inadvertent bump by somebody on the other side of the shelves [or] by an associate carrying something down the aisle bumping into [the shelf]" could cause a can that had been placed on the top riser to fall. Additionally, he testified that Wal–Mart's shelves have pegboard along the backside to give them lateral stability and to prevent objects from one side being pushed through to the other side. He noted, however, that the peg-board does not extend to the risers where Wal–Mart stored the paint cans in question. He then opined that products from one side of the riser could be pushed back such that it would knock products off the other side, creating what Carr termed a "very serious condition."

Even if we assume, *arguendo*, that the trial court erred in permitting Carr to testify as he did, the error was harmless. The erroneous admission of evidence is reversible error only if we determine its admission "probably caused the rendition of an improper judgment." Tex.R.App. P. 44.1; *see Southwestern Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 474 (Tex.1998). Because Carr's testimony

was merely cumulative of Adams's, we hold his testimony was not likely to have caused the rendition of an improper judgment. We therefore overrule Wal–Mart's first point of error.

■ In its second point of error, Wal–Mart contends there was either no evidence or factually insufficient evidence that Wal–Mart's conduct "proximately caused" Sholl's injuries.

In reviewing a no evidence or legal insufficiency of the evidence point, we consider only the evidence that tends to support the jury's verdict and disregard all evidence and inferences to the contrary. *Responsive Terminal Sys. Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex. 1989). If there is more than a scintilla of evidence supporting the jury's finding, the legal sufficiency challenge must fail. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987). If the evidence provides a rational basis for reasonable minds to differ as to the existence of a vital fact, then there is some evidence or more than a scintilla. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). However, if the evidence is so weak as to create a mere surmise or suspicion of its existence, then the evidence is no more than a scintilla, and therefore, no evidence. *Id.*

When considering a challenge to the factual sufficiency of the evidence, we review the entire record and set aside the verdict only if it is against the great weight and preponderance of the evidence. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The parlance used by the courts of appeals is that a finding is against the great weight and preponderance of the evidence if it is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

■ Proximate cause consists of cause in fact and foreseeability. *Doe v.*

*Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995); *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex. 1995). These elements must be established by more than mere conjecture, guess, or speculation. *Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d at 477. Cause in fact exists where the injury would not otherwise have occurred "but for" the defendant's act or omission. *Union Pump Co.,* 898 S.W.2d at 775. Cause in fact does not exist where the defendant's negligence merely provided a condition that made the injury possible. *Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d at 477 (citing *Bell v. Campbell,* 434 S.W.2d 117, 120 (Tex.1968)). " 'The evidence must go further, and show that such negligence was the proximate, and not the remote cause of resulting injuries ... [and] justify the conclusion that such injury was the natural and probable result thereof.' " *Id.* (quoting *Carey v. Pure Distrib. Corp.,* 133 Tex. 31, 124 S.W.2d 847, 849 (1939)). Even where the plaintiff's injury would not have occurred "but for" the defendant's actions, "the nexus between the defendant and the plaintiff's injuries may be too attenuated to constitute legal cause." *Pinkerton's v. Manriquez,* 964 S.W.2d 39, 47 (Tex.App.—Houston [14th Dist.] 1997, writ denied); *see also Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d at 477; *Union Pump Co.,* 898 S.W.2d at 776; *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex.1991).

Here, there is evidence, *inter alia,* that the shelf containing the cans of paint posed an unreasonable risk of harm because: (1) one gallon cans of paint were stacked three and four high, (2) on the top shelf (riser), which was approximately six feet above the floor, (3) without lateral support between the risers of the shelving units to prevent merchandise from one shelf being pushed through to the other side, (4) with display hooks protruding from the shelves, and (5) with a high center of gravity. Additionally, the record clearly reflects that Wal-Mart was aware that merchandise could fall from shelves and injure customers or employees. Wal-Mart employees actually stacked the paint cans on the shelf (riser). The directive to store paint on the riser came from Wal-Mart's corporate office. Finally, Wal-Mart was aware that heavy objects should be located on lower shelves. We find this to be more than a scintilla of evidence that Wal-Mart's negligence was the cause in fact of Sholl's injury. Furthermore, having considered all the evidence, we are of the opinion that the jury's verdict as to cause in fact is not contrary to the great weight and preponderance of the evidence.

■■■ The second element of proximate cause, foreseeability, "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Pinkerton's,* 964 S.W.2d at 48 (citing *Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d at 478 and *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992)). The danger is foreseeable if the injury is of the type that "might reasonably have been anticipated." *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 551 (Tex.1985).

Wal-Mart's assistant store manager, Najera, conceded that there is a risk that "heavy merchandise stacked up high ... will fall and hurt somebody." We find this evidence sufficient, both legally and factually, to sustain this component of proximate cause. Accordingly, we overrule appellant's second point of error.

■■■ In its third point of error, Wal-Mart asserts there is legally and factually insufficient evidence that it had notice of the "unreasonable risk of harm." Wal-Mart contends that because question one of the jury charge asked whether the jury found "defendant had actual knowledge of the danger" and did not include an instruction that it could find Wal-Mart negligent based upon constructive knowledge, Sholl was bound by the jury charge and having failed to present any evidence of actual knowledge, the judgment should be reversed.

Rule 279 of the rules of civil procedure provides that where an element from a ground of recovery is omitted and it is neither objected to nor requested, then if there is some evidence to support it, it will be deemed found to support the judgment. TEX.R. CIV. P. 279; *see Ramos v. Frito-Lay, Inc.*, 784 S.W.2d 667, 668 (Tex.1990); *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 364 (Tex.App.—Corpus Christi 1994, no writ). Here, the constructive knowledge element of plaintiff's premises liability cause of action was omitted from the charge. Neither party objected to this omission, however, the jury found Wal–Mart 90% negligent and the trial court entered judgment accordingly. Therefore, if there is evidence that Wal–Mart had constructive knowledge of the alleged unreasonable risk of harm, this element will be deemed found in support of the judgment. *Frito–Lay, Inc.*, 784 S.W.2d at 668; *Mechura Farms*, 875 S.W.2d at 364.

As noted in point of error two, the alleged hazardous condition was an unstable shelf created by: (1) one gallon cans of paint stacked three and four high, (2) on the top shelf (riser), (3) without lateral support between the risers of the shelving units, (4) with display hooks protruding from the shelves, and (5) with a high center of gravity. The record reveals that in utilizing its elevated system of warehousing, Wal–Mart employees stacked the cans of paint three or four high on the shelf (riser); Wal–Mart was aware that heavy objects should be placed on lower shelves to maintain a low center of gravity; Wal–Mart knew that objects occasionally fell from shelves injuring customers and/or employees; Wal–Mart admitted that customers are permitted to read the labels of products stacked on the riser without asking for assistance as required by the posted signs; Wal–Mart further conceded that a customer should be able to reach up to merchandise on the top shelf (riser) and turn the can to read the label without other cans falling.

In *Keetch v. Kroger*, 845 S.W.2d 262 (Tex.1992), the court explained that where the defendant creates the hazardous condition, it may support an inference that it had constructive knowledge of the condition itself. *Keetch*, 845 S.W.2d at 265. "However, the jury still must find that the owner or occupier knew or should have known of the condition." *Id.* (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.1983)). We analogize this case to *National Convenience Stores, Inc. v. Arrington*, 896 S.W.2d 312 (Tex.App.—Houston [1st Dist.] 1995, no writ), where a store patron was injured after she tripped over a mat that had been placed outside the front door of the store and was carried into her legs by the wind. *Arrington*, 896 S.W.2d at 314. Holding the store had constructive knowledge of the hazardous condition, the Houston court emphasized "the evidence and reasonable inferences drawn therefrom show that the cashier could see the windy conditions and the mat from the cash register; that the windy conditions existed for much of the evening, which was sufficient time to be observed by the cashier; that appellant and its employees are aware that a mat can pose a hazardous condition to its customers; that the mat could have been placed inside the front door; and that the mat was light enough to be moved by the wind and/or the previous foot traffic." *Id.* Like the evidence in *Arrington*, the evidence in the present case suggests Wal–Mart had at least constructive knowledge of the hazardous condition. Therefore, the omitted element of the court's charge is deemed found and we hold there is legally and factually sufficient evidence to support such element. Appellant's third point of error is overruled.

■ In point of error four, Wal–Mart contends there was factually insufficient evidence that Sholl was only 10% negligent. Specifically, Wal–Mart argues the evidence is insufficient because: (1) Sholl gave conflicting testimony regarding whether she turned the can of paint on the

riser before others fell, (2) Sholl failed to observe the warning signs to ask for assistance with merchandise on the riser, (3) Sholl attempted to conceal that she was addicted to her medication, which affected her recollection of the incident, and (4) there was no need for Sholl to reach to the riser for the can of paint because there was already a can in her shopping cart and other similar cans located on the floor.

It is the trier of fact who judges the credibility of the witnesses and the weight to be given their testimony, and it may resolve inconsistencies in the testimony, accepting or rejecting such portions as it sees fit. *Hironymous v. Allison*, 893 S.W.2d 578, 582 (Tex.App.—Corpus Christi 1994, writ denied). We may not substitute our opinion for that of the fact finder merely because another result is possible. *Kirby v. Chapman*, 917 S.W.2d 902, 914 (Tex.App.—Fort Worth 1996, no writ); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Wal–Mart asks this Court to reweigh the evidence and assess the credibility of Sholl's testimony. This we cannot do. Having reviewed the entire record, we do not find the evidence so contrary to the great weight and preponderance of the evidence such that it is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." Accordingly, we overrule Wal–Mart's fourth point of error.

■ In its fifth point of error, Wal–Mart claims the trial court erred in predicating the damages question on an affirmative answer to the issue of liability because it advises the jury of the consequences of its answers.

Appellant is correct that procedure rule 277 acts as a prohibition to the court informing the jury of the effect of its answers. *See* Tex.R.Civil Proc., 277; *Mobil*

*Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974); *H.E. Butt Grocery Co. v. Bilotto*, 928 S.W.2d 197, 199 (Tex.App.—San Antonio 1996) *aff'd*, 985 S.W.2d 22, 41 Tex. Sup.Ct. J. 1213, 1214, 1998 WL 388586 (July 14, 1998). However, the rule expressly provides that "[t]he court may predicate the damage question or questions upon an affirmative finding of liability." Tex.R.Civil P. 277; *see H.E. Butt Grocery Co. v. Paez*, 742 S.W.2d 824, 825 (Tex.App.—Corpus Christi 1987, writ denied). The supreme court has recently held this provision does not improperly inform the jury of the legal effect of its answers. *See Bilotto*, 41 Tex. Sup.Ct. J. at 1214–15. The charge in the case at bar complied with the above rule of civil procedure. We therefore overrule Wal–Mart's fifth point of error.

■ In point of error six, Wal–Mart avers there was legally and factually insufficient evidence to support the jury's award of $674,430.23 in actual damages. Alternatively, Wal–Mart contends the damages award was grossly excessive.

■ Wal–Mart acknowledges that in *Greater Houston Transp. Co. v. Zrubeck*, 850 S.W.2d 579 (Tex.App.—Corpus Christi 1993, writ denied), this Court held that where a multi-element damage question is submitted in broad-form, the only way to effectively challenge it on appeal is to address each and every element and show that not a single element is supported by sufficient evidence. *Zrubeck*, 850 S.W.2d at 589. However, Wal–Mart argues that because we did not cite supreme court case law for this proposition, that *Zrubeck* is somehow less authoritative. We recently reiterated the *Zrubeck* holding in *City of Port Isabel v. Shiba*, 976 S.W.2d 856, 858 (Tex.App.—Corpus Christi 1998, pet. filed) and find its reasoning sound.[2] When a

---

2. We note that other courts have followed the reasoning of *Zrubeck* in similarly holding that unless each element of a multi-element damage award submitted in broad-form is challenged and shown to be deficient, it cannot be overturned on appeal. *See Goodman v. Page*, 984 S.W.2d 299, 304–05 (Tex.App.—Fort Worth Nov.19, 1998, n.w.h.); *Pitman v. Lightfoot*, 937 S.W.2d 496, 524 (Tex.App.—San Antonio 1996, writ denied); *Price v. Short*, 931 S.W.2d 677, 688 (Tex.App.—Dallas 1996, no writ); *Haryanto v. Saeed*, 860 S.W.2d 913,

damage question is submitted to the jury in broad-form, it is possible for the jury to award the entire amount on the basis of any one of the elements. *See K Mart Corp. v. Rhyne*, 932 S.W.2d 140, 144 (Tex. App.—Texarkana 1996, no writ). Therefore, "an appellate court cannot ascertain with certainty what amount of the damages award is attributable to each element." *Zrubeck*, 850 S.W.2d at 589 (citing *Kansas City Southern Ry. Co. v. Carter*, 778 S.W.2d 911, 916 (Tex.App.—Texarkana 1989, writ denied)). This is particularly true when the damages question includes "the more amorphous, discretionary damages, *e.g.*, mental anguish, pain and suffering, [and] physical impairment and disfigurement." *Id.* Such damages should be left to the discretion of the trier of fact. *Id.* (citing *Kneip v. UnitedBank–Victoria*, 774 S.W.2d 757, 760 (Tex.App.—Corpus Christi 1989, no writ)). Consequently, we disagree with Wal–Mart's assertion that *Zrubeck* should not be followed in the present case.

 Before we address the specific evidence in this case, however, we must consider Wal–Mart's argument that the trial court erred in excluding evidence that Sholl had undergone a hysterectomy at a young age, she had a lump removed from one of her breasts in 1995, and had had more than one sexual partner between November 1995 and November 1996. Wal–Mart wished to present this evidence: (1) to rebut Sholl's assertions that she was in "excellent health" prior to the incident and that she was unable to have a "social life" because of her injuries; and (2) to show there were other stressors in Sholl's life that could have contributed to her mental health problems.

 The admission or exclusion of evidence is committed to the sound discretion of the trial court. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). In determining whether the trial court erred in excluding evidence, we re-

view its decision based upon an abuse of discretion standard. *Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 531 (Tex.App.—Tyler 1992, writ denied). It is an abuse of discretion if the trial court acts without regard for any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in similar circumstances does not demonstrate that an abuse of discretion has occurred." *Southwestern Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965) (quoting *Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290 (1959)).

Texas Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." TEX.R. EVID. 403. While another judge may have ruled differently, it is apparent to this Court the trial judge followed guiding rules and principles. We therefore hold he did not abuse his discretion in excluding Wal–Mart's proffered evidence.

We now address the evidence relevant to Wal–Mart's sufficiency challenge. Here, the record reflects, *inter alia*, that Sholl suffered physical injuries to her head, face, and shoulder. As a result of her head injury, Sholl experienced migraine headaches, blurred vision, memory loss, myofacial/muscle pain, nausea, ringing of the ears, and general muscle aches and pains. Furthermore, she developed psychological disorders, including: anxiety, depression, panic attacks, and agoraphobia. Sholl's past medical expenses were $14,990.23 and there was testimony that she would incur additional medical expenses for the remainder of her life to treat both physical and emotional problems. Finally, although Sholl was able to maintain steady employment prior to her

injuries, she has been unable to do so since then.

This is some evidence of Sholl's damages upon which the jury could have made its determination. We hold it is legally sufficient to sustain the jury's award. Additionally, having reviewed the entire record, we do not find the award to be so against the great weight and preponderance of the evidence such that it is manifestly unjust and hold it is factually sufficient.

■ Finally, we address Wal–Mart's assertion that the jury's damage award was excessive. In support of this argument, Wal–Mart suggests that where there is factually insufficient evidence of one element of a damages award, an appellate court may properly suggest a remittitur of that part of the verdict. *See Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex.1987). Be that as it may, we have already found the evidence factually sufficient. Therefore, there is no need to recommend a remittitur. Wal–Mart's sixth point of error is overruled.

The judgment of the trial court is AFFIRMED.