# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

==============================

## ON MOTION FOR REHEARING

==============================

## NO. 03-03-00620-CV

**Nolan Byron Warren, Appellant**

**v.**

**Nora Zamarron, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. GN-300531, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Our opinion and judgment issued on February 3, 2005 are withdrawn, and the following opinion is substituted.

A no-answer default judgment was entered against appellant Nolan Byron Warren in a suit brought by appellee Nora Zamarron for damages arising out of an automobile accident. In this restricted appeal, Warren complains that service was not effected in strict compliance with the rules and that the trial court's award of damages is not supported by the evidence. We affirm in part and reverse and remand in part.

**Service of Process**

Warren first asserts that service was not effected in strict compliance with the rules and therefore the default judgment cannot stand. He asserts that error is evident on the face of the record because the return receipt was signed by "Byron Warren," whereas the court documents name "Nolan Byron Warren" as defendant.

A default judgment may be attacked through a restricted appeal brought (1) within six months of the date of the judgment, (2) by a party to the suit (3) who did not participate in the actual trial, (4) if the asserted error is apparent on the face of the record. *Norman Communications v. Texas Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997); *see* Tex. R. App. P. 26.1(c), 30. A plaintiff defending a default judgment must show strict compliance with the procedural rules governing citation and return of service. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994); *see* Tex. R. Civ. P. 99, 103, 105, 106, 107. In reviewing a default judgment, we make no presumptions of compliance with the rules. *Primate Constr.*, 884 S.W.2d at 152.

After an original petition is filed, the clerk issues a citation and delivers it "as directed by the requesting party"; the party requesting citation is responsible for obtaining service of the citation and a copy of the petition. Tex. R. Civ. P. 99(a). The citation provides information about the case, such as the court in which it was filed, the parties' names, the date by which the defendant must answer, and that failure to answer may result in default judgment being entered against the defendant. Tex. R. Civ. P. 99(b). An authorized person serves the citation by delivering it and a copy of the petition to the defendant in person or by registered or certified mail, return receipt

2

requested. Tex. R. Civ. P. 103, 106(a). When the serving officer receives the citation, he or she must note the time and date of receipt. Tex. R. Civ. P. 105. Once service is made, the serving officer must sign a "return of service" and note when and how citation was served. Tex. R. Civ. P. 107. If service is made by registered or certified mail, the return receipt signed by the addressee must be attached to the return of service. *Id*. A return of service is considered prima facie evidence of the facts recited therein. *Primate Constr.*, 884 S.W.2d at 152. Such recitations carry so much weight that they are rebutted only by corroborated proof. *Id*.

Zamarron named "Nolan Byron Warren" as defendant and provided a post office box as the appropriate address for service of process. Citation was issued to "Nolan Byron Warren" and the return of service was filed by an authorized private process server and verified by a notary public. The return recites that the citation, petition, and several discovery documents were executed at the given address on February 24, 2003 to "Nolan Byron Warren" by restricted certified mail, return receipt requested. The return receipt attached to the return of service lists "Nolan Byron Warren" as the addressee, states it is "RESTRICTED DELIVERY ONLY!" and that the restricted fee was paid, and has the word "ONLY" handwritten next to a checked box requiring that the receipt be signed by the addressee. "Nolan Byron Warren" is hand-printed in the "Received by" block, and "Byron Warren" is the name signed in the signature block next to the "Addressee ONLY" box.

Warren's argument is that because the return receipt was not signed "*Nolan* Byron Warren," the receipt does not show strict compliance with the rules. We disagree. It is true that the courts examine service of citation in default judgment cases very strictly. *See*, *e.g.*, *Uvalde Country*

3

*Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (holding that citation to and service on "Henry Bunting," not "Henry Bunting, *Jr.*," were defective); *TAC Ams., Inc. v. Boothe*, 94 S.W.3d 315, 320-21 (Tex. App.—Austin 2002, no pet.) (holding that return of service showing citation obtained *after* it was purportedly served was defective). However, the return of service and return receipt brought forth in this cause comply with the rules of procedure.

The return receipt notes in several places that it was restricted and could only be given to and signed by the addressee himself. Warren's full name, Nolan Byron Warren, is handwritten below the signature line as the person by whom the citation was received. It is only Warren's handwritten signature that does not include "Nolan," and we will not hold Zamarron responsible for the manner in which Warren apparently chose to sign his name. Process servers cannot be expected to require a citation recipient to sign his or her name in a particular manner, and it would be virtually impossible to effect proper service if a recipient could defeat service by failing to sign his or her full, formal name. The fact that Warren did not sign his first name does not render this service invalid or defective.[1] The record contains uncontroverted, prima facie evidence that Warren was the person

---

[1] We do not know what name Warren uses in his daily life, but it is certainly not inconceivable that he, like many others, uses his middle name instead of his first or full name. Warren cites *Uvalde Country Club v. Martin Linen Supply Co.* for support of his argument. 690 S.W.2d 884 (Tex. 1985). In *Uvalde Country Club*, the petition stated that service should be made on Henry Bunting, Jr., but citation was directed to Henry Bunting. *Id*. at 884. The court held that there was no showing that Henry Bunting was authorized to receive service or otherwise connected to the defendant. *Id*. at 885. Here, the petition, the citation, and the return receipt were all addressed to Nolan Byron Warren. The affidavit of service recites that the documents were delivered "to the within named Nolan Byron Warren via U.S.P.S. Restricted Certified Mail." *See Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 & n.1 (Tex. 1994) (return of service is prima facie evidence of recited facts; return stated registered agent was served and was prima facie evidence of person's status as registered agent). There was no error committed by Zamarron or the process server that would render this service invalid.

4

served by restricted certified mail. *See id*. We hold there is no error in service of citation on the face of this record. We overrule Warren's first point of error.

**Evidence Supporting the Damages Award**

Warren next argues that the evidence is legally and factually insufficient to support the trial court's damages awards, attacking the evidence supporting the court's findings of various types of damages and the authentication of some of Zamarron's evidence.

*Standard of Review*

Review by restricted appeal involves a review of the entire case, and legal and factual sufficiency claims may be raised. *Norman Communications*, 955 S.W.2d at 270. However, error must appear on the face of the record, which consists of all the papers on file, including the statement of facts. *Id*. When a default judgment on an unliquidated claim is entered, all factual allegations set forth in the petition are deemed admitted except for the amount of damages. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). Before awarding unliquidated damages in a default judgment, a trial court must hear evidence of those damages. Tex. R. Civ. P. 243; *Heine*, 835 S.W.2d at 83. If no findings of fact or conclusions of law are filed or requested in a bench trial, we will assume that the trial court made all findings necessary to support its judgment, but when a reporter's record is made part of the record, these implied findings may be challenged for factual or legal sufficiency. *Heine*, 835 S.W.2d at 83-84. In reviewing legal sufficiency, we will consider only the evidence and inferences that tend to support the finding, disregarding all contrary evidence and inferences and will overrule the challenge if more than a scintilla of evidence supports the finding.

5

*Id*. at 84. In reviewing factual sufficiency, we will not substitute our judgment for the fact-finder's, but will consider all of the evidence and reverse only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust or shock the conscience. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

*Evidence of Damages*

Because Warren attacks the sufficiency of the evidence supporting the trial court's damages awards, a recitation of the evidence produced at the default judgment hearing is necessary. Zamarron testified that she was rear-ended by Warren in February 2001 and that the accident was Warren's fault. Zamarron testified that as a result of the accident she suffered head, neck, and back injuries, which caused her physical and mental pain and suffering and required medical treatment. Zamarron received cortisone injections, went to therapy with a chiropractor, and was seeing an orthopedic surgeon. Zamarron testified that the surgeon determined Zamarron had "a 10 percent disability as a result of this collision" and prescribed a "TENS unit" for therapy. Zamarron was still having neck problems and noticed that the pain changed with the weather. She testified that her past treatments caused her pain and she anticipated similar pain for future therapy and treatments.

Zamarron introduced her medical records and bills into evidence. The records show that Zamarron was involved in an earlier automobile accident in September 2000, and state that her doctors tried to differentiate between the two accidents. One doctor noted that Zamarron's injuries were caused by the February 2001 accident with Warren and that several months later she still had persistent pain in her neck and shoulder. The bulk of Zamarron's records refer to the February 2001 accident as the date of injury and focus on that accident as the cause of her injuries.

6

*Past and Future Medical Expenses*

Warren first attacks the trial court's awards for past and future medical expenses, arguing that (i) Zamarron's medical records were not properly authenticated and thus improperly admitted, (ii) there was no proof that the bills were for reasonable and necessary services, and (iii) the bills submitted do not total the amount awarded for past expenses.

We agree with Warren that Zamarron did not prove the reasonable necessity of her medical expenses, an essential element to recovery of medical expenses. *See Jackson v. Gutierrez*, 77 S.W.3d 898, 902 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Proof of the amounts Zamarron actually paid in medical expenses, presented through the admission of her medical records and bills, does not establish that the expenses were necessary. *See id*. Indeed, even if Zamarron had proved that the expenses were reasonable and customary, there is still insufficient evidence that they were necessary.[2] *See id*. A plaintiff may prove that her medical expenses were reasonably necessary through expert testimony or through an affidavit complying with section 18.001 of the civil practice and remedies code. *Id*.; *see* Tex. Civ. Prac. & Rem. Code Ann. § 18.001 (West 1997). Zamarron produced neither expert testimony nor an affidavit and did not make the required showing of necessity. The evidence is factually insufficient to support the trial court's awards of past and future medical expenses. We therefore reverse the awards for past and future medical expenses. We need not address whether Zamarron's medical records were properly authenticated or admitted or whether any error in the admission of the records was waived.

---

[2] Although Warren argues that Zamarron's medical records were improperly admitted, even if we were to consider the records, they do not show reasonable necessity.

7

*Past and Future Pain and Suffering*

We now turn to Warren's complaints related to the trial court's awards for past and future pain and suffering. Zamarron testified that as a result of the accident she suffered head, back, neck, and shoulder injuries and suffered pain in those areas. She stated that her past medical treatments were very painful; that she underwent several months of treatment with a chiropractor; that she was currently being treated by an orthopedic surgeon, who believed she had a ten-percent disability as a result of the accident; and that she still suffered neck pain. Zamarron believed that, based on her past and on-going pain, she would continue to suffer pain in the future.

Awards for damages such as pain and suffering should not be disturbed unless they are excessive. *See Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 829 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Wal-Mart Stores, Inc. v. Sholl*, 990 S.W.2d 412, 420 (Tex. App.—Corpus Christi 1999, pet. denied); *Owens-Corning Fiberglass Corp. v. Martin*, 942 S.W.2d 712, 719 (Tex. App.—Dallas 1997, no writ). Based on this record, we hold that the evidence is legally and factually sufficient to support the trial court's awards of $9,793 for past pain and suffering and $9,793 for future pain and suffering. We overrule Warren's complaints related to the pain and suffering awards.

*Past and Future Mental Pain and Suffering*

The trial court's awards for mental pain and suffering, however, cannot be sustained. The only evidence as to mental anguish came when Zamarron was asked, "Did you experience any mental pain and suffering," and responded, "Yes." Recovery for mental anguish requires evidence of the nature, duration, or severity of mental anguish leading to a substantial disruption in her daily

8

routine or other evidence of a high degree of mental distress amounting to more than mere worry or anxiety.[3] *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). Zamarron's agreement that she had endured mental pain and suffering does not amount to the required showing. *See Jackson*, 77 S.W.3d at 903. The evidence is factually insufficient to support the trial court's awards for mental pain and suffering. We therefore reverse those awards.

*Costs*

Finally, we consider the trial court's $300.84 award for litigation costs. Zamarron correctly notes that a prevailing party may recover "all costs incurred therein." Tex. R. Civ. P. 131. Zamarron stated during the default hearing that she had incurred "$300.84 for the cost of litigation, being post judgment at the legal rate allowed by law, and all costs of court incurred in the cause of action and in defense of this judgment." However, the certified bill of costs included in the record is not entirely clear as to the costs incurred by Zamarron,[4] and on appeal, she states that her $300.84 request "was merely a specification of the total costs of court as of the time of default, said costs

---

[3] Case law treats "mental pain and suffering" interchangeably with "mental anguish." *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 442 (Tex. 1995) ("mental anguish" damages permitted when "mental suffering" accompanied by physical injury or produced by particularly disturbing event); *Carrell v. Richie*, 697 S.W.2d 43, 44-45 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (upholding award for "mental pain and suffering" when evidence described terror, "fear, trepidation, humiliation and embarrassment"); *see also Carr v. Weiss*, 984 S.W.2d 753, 768, 770 (Tex. App.—Amarillo 1999, pet. denied) (using both phrases in discussion of mental anguish damages).

[4] In his brief, appellant states, "Although it is not entirely clear, the certified bill of costs appears to show taxable court costs of $274." The bill of costs lists the following charges: various filing fees totaling $185, $8 for issuance of citation, $73 in service fees, two $8 fees titled "fee account payable other," one marked with a "P" and the other with a "U."

9

being for costs of filing fee, citation fee, and service fee," but provides no further explanation that would result in a $300.84 total. Because we are remanding portions of this cause for further proceedings, further costs might be incurred. Therefore, we need not attempt to interpret the bill of costs to determine whether the trial court's award was correct. Instead, we reverse the award of costs and remand it to the trial court for a new calculation of costs after further proceedings have been conducted.

### Evidence Showing a Causal Nexus

Last, Warren argues that the evidence is legally and factually insufficient to show a causal nexus between the accident and Zamarron's damages. We disagree.

A plaintiff in a default judgment must prove a "causal nexus" between the event made the basis of the suit and the plaintiff's injuries. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984). "Proving that the event sued upon caused the plaintiff's alleged injuries is part and parcel of proving the amount of damages to which the plaintiff is entitled." *Id*. Zamarron testified that as a result of the accident caused by Warren, her head, neck, back, and shoulders were injured, causing her pain and suffering and requiring medical care. We hold that Zamarron's testimony established a causal nexus between the accident and her injuries and damages. *See Jackson*, 77 S.W.3d at 902.

### Conclusion

We affirm the trial court's finding that service was properly made and its entry of default judgment against Warren. We hold that Zamarron sufficiently established a causal nexus between the accident cause by Warren and her injuries and damages and affirm the trial court's

10

awards of past and future pain and suffering. However, the damages awards for past and future medical expenses and mental pain and suffering are not supported by sufficient evidence and are reversed. We remand the cause for a new hearing on those measures of damages and for court costs. *See Heine*, 835 S.W.2d at 86.[5]

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed: May 5, 2005

_____

[5] Warren argues that it is improper to remand only part of the damages award for a new trial, citing *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80 (Tex. 1992), and *Texaco, Inc. v. Phan*, 137 S.W.3d 763 (Tex. App.—Houston [1st Dist.] 2004, no pet.). In *Heine*, the plaintiff obtained a default judgment and was awarded $159,665 in damages, $120,000 of which was for lost profits. 835 S.W.2d at 83. The supreme court held there was insufficient evidence of lost profits. *Id*. at 86. However, instead of reversing the entire award, the court limited its reversal, only "remand[ing] the cause to the trial court for a new trial *on the issue of lost profits*." *Id*. (emphasis added). In *Texaco*, the plaintiffs were awarded damages for lost profits and mental anguish and exemplary damages. 137 S.W.3d at 766. The court of appeals held that there was insufficient evidence of lost profits and, without actual damages, no grounds for exemplary damages. *Id*. at 772. The court reversed the judgment and remanded "the cause for a new trial as to damages," citing *Heine*. *Id*. at 774. The court did not discuss the mental anguish damages.