**CITY OF FORT WORTH, Appellant,**

v.

**Jeneda M. GAY, Appellee.**

No. 2–97–202–CV.

Court of Appeals of Texas,
Fort Worth.

Aug. 27, 1998.

Theodore P. Gorski, Jr., Luis E. Fierros, Asst. City Attys., Fort Worth, for Appellant.

Mark S. Stewart, Timothy M. Hoch, Fort Worth, for Appellee.

Before DAY, RICHARDS and HOLMAN, JJ.

**OPINION**

DAY, Justice.

## I. INTRODUCTION AND HOLDING

Jeneda M. Gay sued the City of Fort Worth for her personal injuries she sustained when she stepped in water in a street gutter and slipped on the wet pavement. In a bench trial, the trial court rendered judgment for Gay and awarded her $40,000. The City appeals and raises three issues:

- Whether governmental immunity bars Gay's claim;
- Whether Joe Hal Adams, who testified about the City's knowledge of the defect, was not properly designated in response to the City's interrogatories and should have been excluded as a witness; and
- Whether the condition was not a special defect as a matter of law.

We find that the City's sovereign immunity is waived under the Tort Claims Act, Adams was not properly designated and should have been excluded as a witness, and the condition was a premises defect. Accordingly, we reverse and render judgment that Gay take nothing.

## II. BACKGROUND FACTS

On June 26, 1992, Gay was in a residential neighborhood looking for garage sales. After shopping at Jack Brown's sale, she decided to take "the closest way" to cross Joseph Street to another garage sale. After seeing a puddle of water in the curb gutter, which was about four feet long and three to six inches wide, Gay stepped off the curb, slipped, and fell.

The water in the curb gutter flows from an underground spring that surfaces near the curb of Adams's property. The City had installed a surface drainage system so water would flow across the intersecting street, Muse Street, through a concrete valley gutter into the Joseph Street storm sewer. Adams testified that the standing water near the Joseph Street curb had existed periodically since 1964. He further stated that the City had inspected this standing water condition on several occasions before Gay's fall.

Gay sued the City and Brown for the defect, arguing that the City was negligent in their actions regarding the condition at the intersection of Joseph and Muse Streets. The trial court granted summary judgment in favor of Brown, but denied the City's motion. In its answer, the City raised a plea to the jurisdiction that it was entitled to sovereign immunity. We can find no indication in the record showing the trial court ruled on this plea to the jurisdiction.

During discovery, the City asked Gay to provide the identity of all witnesses who had knowledge of the facts of the case. Gay included "Irene Adams and her husband" and "Mr. and Mrs. I.S. Adams and Irene Adams" in her list of fact witnesses. When Gay offered Joe Hal Adams as a witness at trial, the City objected because Gay had not properly identified him in her interrogatory answers. The trial court allowed Adams to testify.

The trial court found that the condition was a special defect, Gay did not have knowledge of the defect, the City had actual knowledge of the defect, and the City failed to warn Gay.

## III. SOVEREIGN IMMUNITY

■ In its first issue, the City argues that it was entitled to sovereign immunity against Gay's claims under the Tort Claims Act. To make this determination in this case, we must decide whether the complained of actions are governmental or proprietary, whether the actions were discretionary, and whether Gay's claims are of the type that subject the City to liability. *See McKinney v. City of Gainesville*, 814 S.W.2d 862, 865–66 (Tex.App.—Fort Worth 1991, no writ).

■ The functions Gay complains the City negligently performed, street maintenance and storm sewers, are classified as governmental and subject the City to liability.[1] But

---

1. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 3.02, 1987 Tex. Gen. Laws 37, 47–48, *amended by* Act of May 7, 1997, 75th Leg., R.S., ch. 152, § 1, 1997 Tex. Gen. Laws 301, 301–02

this alone does not waive the City's immunity: the City is also immune from liability under the Act for the exercise of discretionary powers. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.056 (Vernon 1997); *McKinney*, 814 S.W.2d at 865 (holding section 101.0215 does not waive governmental immunity merely because a governmental action falls within the listed governmental functions; thus, further inquiry under the Act is necessary).

■ There is no hard-and-fast rule for determining when an activity is discretionary.[2] But it has been stated that the discretionary-act exemption only applies to policy decisions. *See State v. Terrell*, 588 S.W.2d 784, 787 (Tex.1979); *Tarrant County Water Control v. Crossland*, 781 S.W.2d 427, 433 (Tex.App.—Fort Worth 1989, writ denied). Gay's claims focus on the City's failure to maintain, clean, and inspect the area of the street where she fell. Maintenance activities undertaken at the operational level are not discretionary functions and are not immune from liability. *See City of Round Rock v. Smith*, 687 S.W.2d 300, 303 (Tex.1985).

■ Our final inquiry is whether the City waived its liability under section 101.021. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997); *See McKinney*, 814 S.W.2d at 866. Sovereign immunity is waived under the Act on actions for personal injury caused by a condition or use of real property if the governmental unit would be liable to the claimant according to Texas law. *See id.* § 101.021(2). To properly state a claim involving the "condition" of property, it is sufficient to allege that defective or inadequate property contributed to the injury. *See Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 31–32 (Tex.1983). Gay alleged such a claim by questioning the City's negligence in maintaining the street and sewer system, which proximately caused her fall. Accordingly, the City was not entitled to sovereign immunity. We overrule its first issue.

(current version at TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(4), (9) (Vernon Supp.1998)).

## IV. IMPROPER DESIGNATION OF FACT WITNESS DURING DISCOVERY

In its third issue, the City argues that the trial court improperly allowed Adams to testify regarding the City receiving notice of the defect because he had not been properly designated. Adams is Irene Adams's son and he has never been married. I.S. Adams and Irene Adams are the same person—Adams's mother. Thus, Gay never designated Adams as a witness.

■ Generally, upon a proper discovery request, a party has an obligation to disclose the identity and location of persons with knowledge of relevant facts. *See Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 916 (Tex. 1992) (op. on reh'g). When a witness has not been properly designated, the party

> shall not be entitled to . . . offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

TEX. R. CIV. P. 215.5. This rule is mandatory, and the only remedy—exclusion of the witness—is automatic unless the offering party presents good cause on the record to excuse its imposition. *See Alvarado*, 830 S.W.2d at 914. The purpose of this rule is to require complete discovery so the responsible assessment of settlement is promoted and trial by ambush is prevented. *See id.*

■ The case law is fairly liberal in providing good cause when the location information provided was sufficient to allow the requesting party to find the witness. *See Smith v. Southwest Feed Yards*, 835 S.W.2d 89, 91 (Tex.1992) (holding failure to designate party as witness not fatal because interrogatory answers showed party had knowledge of relevant facts); *Varner v. Howe*, 860 S.W.2d 458, 464 (Tex.App.—El Paso 1993, no writ) (holding witness's business address, even though witness's middle name omitted,

2. The question of whether a city's actions fall within its discretionary power is a question of law. *See McKinney*, 814 S.W.2d at 867.

enough information because party could locate witness); *Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623, 631–32 (Tex.App.—Houston [1st Dist .] 1993, writ denied) (holding sufficient location information given even in the absence of witness's phone number). However, we liken the circumstances in this appeal to cases in which the witness was never identified. In those cases, the Texas Supreme Court has repeatedly held that good cause to admit the witness's testimony was not shown under the rule that counsel cannot be excused from the requirements of the rule without a strict showing of good cause. *See generally Smith*, 835 S.W.2d at 90 & n. 1. Good cause cannot be based solely upon inadvertence of counsel, lack of surprise, or uniqueness of the excluded testimony. *See Alvarado*, 830 S.W.2d at 915.

■ In this case, Gay argued that Adams should be allowed to testify because of a lack of surprise to the City:

> [Counsel for Gay]: I do believe, Your Honor, that I have good cause for and would ask the Court for late designation. There is no surprise. The City just simply did not even try to contact these people.
>
> THE COURT: All right. Overrule the objection.

Gay additionally argues in this court that because the only male living at the listed address is Adams, the City was given enough information to identify and locate him.

As stated above, good cause cannot be based solely on a lack of surprise to the opponent. We also do not believe that the City was on notice that anyone living at the listed address for "Irene Adams and her husband" or "Mr. and Mrs. I.S. Adams and Irene Adams" could be called as a witness. Thus, good cause was not shown on this record, and the trial court abused its discretion in allowing Adams to testify.

■ We must now ask whether that error was harmful. *See Alvarado*, 830 S.W.2d at 917. The erroneous admission of a nondesignated witness's testimony is not harmful if that testimony is merely cumulative of properly admitted testimony. *McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 188 (Tex.1984), *cert. denied*, 469

U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985). Adams testified that he had called the City to come look at the area because water was always "seeping into the street." Adams further stated that engineers for the City came out about "half a dozen times" and determined that there was a problem, but nothing was ever done. Adams was the only witness to testify about any notice to the City concerning the defect near the intersection of Muse and Joseph Streets; thus, his testimony was not cumulative. This evidence was intended to show that the City knew about the problem, which is a vital element of proving both a premise and a special defect. *See Peterson v. City of Fort Worth*, 966 S.W.2d 773, 775 (Tex.App.—Fort Worth 1998, no pet.). Under these circumstances, we sustain the City's third issue and hold that the error in admitting Adams's testimony was reversible. *See* Tex. R. App. P. 44.1(a)(1).

### V. Premise Or Special Defect

In its second issue, the City posits that the defect was a premise defect and that, as a matter of law, Gay failed to prove all elements of a premise defect. We will first address what type of defect the condition was.

■ When a claim for personal injury is based on a condition or use of real property, as Gay's is, the duty the governmental unit owes to the claimant is determined by whether the claimant's damage was caused by a "premise" defect or "special" defect. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022 (Vernon 1997). Determining whether a condition is a special defect or a premise defect is a question of law for the court. *See City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex.1997). Special defects are "defects such as excavations or obstructions on highways, roads, or streets." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b). Special defects are unexpected and unusual dangers to ordinary users of the roadway. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex.1992) (op. on reh'g). A special defect is distinguished by some unusual quality outside the ordinary course of events; a longstanding, routine, or

permanent condition is not a special defect. *See Stokes v. City of San Antonio,* 945 S.W.2d 324, 326 (Tex.App.—San Antonio 1997, no writ). The test for unexpectedness is objective. *See Hindman v. State Dep't of Highways & Pub. Transp.,* 906 S.W.2d 43, 45 (Tex.App.—Tyler 1995, writ denied).

 Gay testified that before she stepped off the curb, she saw the water and knew that it was wet. She was not surprised to see the water in the gutter because it had just rained. Although she could have avoided the puddle, she did not because she "didn't see any use in walking any further. . . . I wasn't scared to step in water." This did not present an unexpected or unusual danger to Gay. The fact that standing water will be slick is not unusual and is, in fact, expected. Further, standing water after a rain is not outside the usual course of events. We conclude that, under the facts of this case, the condition is not a special defect and is not of the same kind or class as the excavations or obstructions the statute contemplates.

Accordingly, the condition should have been ruled a premise defect by the trial court. To establish a claim based on a premise defect, Gay was required to prove that

1. a condition of the premises created an unreasonable risk of harm to her,
2. the City actually knew of the condition,
3. Gay did not actually know of the condition,
4. the City failed to exercise ordinary care to protect Gay from danger, and
5. the City's failure was a proximate cause of Gay's injury.

*See Payne,* 838 S.W.2d at 237. We held above that the only witness who testified about the City's actual notice of the water, Adams, should not have been allowed to testify because he was not properly designated as a witness. Thus, there was no evidence that the City actually knew of the condition. Further, Gay testified that she knew and appreciated the nature of the condition before she stepped in it. This conclusively proves that Gay actually knew of the condition. As a matter of law, Gay did not prove a claim based on a premise defect. We sustain the City's second issue.

## VI. CONCLUSION

Because Gay alleged a cause of action for her personal injury caused by a condition of tangible real property, the City's sovereign immunity was waived. However, the trial court abused its discretion in admitting Adams's testimony because Gay did not properly designate him as a witness and failed to show good cause for allowing his testimony. Further, the condition is not a special defect as a matter of law, and Gay presented no evidence that the City knew of the condition and she did not know of it. We reverse the judgment of the trial court and render judgment that Gay take nothing by her suit. *See* TEX. R. APP. P. 43.2(c).

RICHARDS, J., concurs without opinion.