Charlene Mills BROWN,
et al., Appellant,

v.

TEXAS DEPARTMENT OF TRANS-
PORTATION and Cameron
County, Appellee.

No. 13–98–499–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 17, 2000.

Brian Jensen, Houston, David T. Bright, Harris & Watts, Corpus Christi, Joseph Prestia, Prestia & Ornelas, Edinburg, for Appellant.

George Christian Kraehe, Willette & Guerra, Brownsville, William E. Williams, III, Assistant Attorney General, Transportation Division, Susan Desmarais Bonnen, Assistant Attorney General, Transportation Division, Austin, for Appellee.

Before Chief Justice SEERDEN and Justices YAÑEZ and CHAVEZ.

## OPINION

YANEZ, Justice.

In this interlocutory appeal, appellants challenge the trial court's dismissal of their claims against appellees, Cameron County (the County) and the Texas Department of Transportation (Tx DOT), on the basis that the claims are barred by sovereign immunity. We reverse.

This case resulted from an auto accident which occurred on the Queen Isabella Causeway (the Causeway), which links South Padre Island and the South Texas mainland. On September 14, 1996, at approximately 3:00 a.m., Nolan Brown lost control of his truck as he crossed the Causeway and collided with the concrete barrier that divides the east-bound and west-bound lanes. Brown's truck eventually came to rest on its side. The passenger in the truck, Jeff Farrington, apparently exited through the sunroof. As Brown was exiting, another vehicle, driven by Muncio Martinez, collided with Brown's truck. Brown was killed in the collision. At the time of the accident, forty-five of the one-hundred and twenty-one lights which are intended to light the Causeway were not functioning due to a number of problems brought on by age and corrosion.

Brown's survivors brought suit against Martinez, the County, Tx DOT and the contractor employed by the County to maintain the Causeway lights. The County and Tx DOT filed pleas to the jurisdiction, arguing that governmental immunity barred appellants' action against them. The trial court dismissed the claims against the County and Tx DOT and ordered the claims severed from the remaining causes of action. Appellants appeal from this dismissal.

Governmental entities are immune from liability except where the legislature has waived that immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021,101.025 (Vernon 1997). Unless the government has waived immunity, the trial court lacks subject matter jurisdiction. *City of Austin v. L.S. Ranch, Ltd.,* 970 S.W.2d 750, 752 (Tex.App.—Austin 1998, no pet.). Immunity is waived where the government owes a duty of care. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.025 (Vernon 1997); *see also, Morse v. State,* 905 S.W.2d 470, 474 (Tex.App.—Beaumont 1995, no writ). A governmental entity remains immune from liability for injuries sustained as a result of a discretionary act. TEX. CIV. PRAC. & REM. CODE ANN. § 101.056 (Vernon 1997). If the performance or non-performance of an act is left to the consideration of the government, it is a discretionary act. *Id.* The immunity covering discretionary acts applies even where the government has acted negligently in making its decision. *See Stanford v. State,* 635 S.W.2d 581, 582 (Tex.App.—Dallas 1982, writ ref'd. n.r.e.). The installation of roadway safety devices is discretionary. *See id.* Therefore, sovereign immunity precludes a plaintiff from alleging misfeasance on the part of the government in failing to install certain safety features, such as guard rails or stop signs. *See id.; see also, Miller v.*

*City of Fort Worth*, 893 S.W.2d 27, 33 (Tex.App.—Fort Worth 1994, pet. dism'd by agr.).

### Design v. Maintenance

■ Although the installation of safety devices is discretionary and immune, governmental immunity is waived for decisions involving structural maintenance. *City of Fort Worth v. Gay*, 977 S.W.2d 814, 817 (Tex.App.—Fort Worth 1998, no pet.). "Maintenance activities undertaken at the operational level are not discretionary functions and are not immune from liability." *Id.* Maintenance is the continuing implementation of a previous policy decision and therefore is non-discretionary. *McClure v. Reed*, 997 S.W.2d 753, 756 (Tex.App.—Tyler 1999, no pet.). Immunity is waived where maintenance is necessary to keep the roads free of unreasonably dangerous premises defects. *See Gay*, 977 S.W.2d at 817. Consequently, there is a duty to repair premises defects that pose an unreasonable risk of harm to travelers. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022 (Vernon 1997).

■ "Maintenance" is most clearly distinguished from "design" in that maintenance refers to the preservation of existing infrastructure. *See Garza v. State*, 878 S.W.2d 671, 675 (Tex.App.—Corpus Christi 1994, no writ)(finding that maintenance involves the preservation of existing conditions); *see also Siders v. State*, 970 S.W.2d 189, 193 (Tex.App.—Dallas 1998, pet. denied) (finding duty to maintain highway as designed). In the instant case, because the government installed road lights, maintenance of those lights is not discretionary. *See Gay*, 977 S.W.2d at

817. The State chose to light the Causeway and having done so, assumed a duty to maintain the lights.[1]

■ Appellants argue that the absence of lighting on the Causeway constituted a premises defect, which was the proximate cause of Brown's death. The absence of lighting resulted from non-functioning lights on the *existing* roadway lamps, and thus was not the result of faulty design, but rather, the failure to maintain the existing lights.

### Government Liability for Premises Defect

■ We must next determine whether or not the failure of a block of lights, arising from a lack of maintenance, is sufficient to establish a premises defect in this case. "Premises" includes the [structure], parts and appurtenances. *Billstrom v. Memorial Med. Ctr.*, 598 S.W.2d 642, 646 (Tex.App.—Corpus Christi 1980, no writ). "Defect" means an imperfection, shortcoming or want of something necessary for completion. *See id.* at 646. In the instant case, the Causeway and its appurtenances constitute the premises, and the faulty light fixtures constitute the defect.

■ To establish governmental liability for premise defects, a plaintiff must plead and prove that: (1) the condition is unreasonably dangerous; (2) the government had knowledge of the defect and did not repair or warn of the defect after a reasonable amount of time; (3) the injured party did not have prior knowledge of the defect; and (4) the defect was the proximate cause of the injured party's harm. *See State Dept. of Highways & Transp. v.*

---

1. On September 5, 1979, the State entered into a construction and maintenance contract with Cameron County, concerning the respective responsibilities of the State and the County for the operation and repair of the Causeway lights. Assignment of liability under the contract was not addressed by the trial court, nor was it raised on appeal. Therefore, we do not reach the issue of whether liability rests with the State, the County, or both.

*Payne,* 838 S.W.2d 235, 237 (Tex.1992). We look to the appellants' petition to determine if it sufficiently pleads facts which, if taken as true, will support jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). Allegations asserted in the pleadings are taken as true and construed in favor of the pleader. *City of El Campo v. Rubio,* 980 S.W.2d 943, 945 (Tex.App.—Corpus Christi, 1998, no pet.)(quoting *Texas Ass'n of Bus.,* 852 S.W.2d at 446).

Appellants asserted in their petition that the premises defect on the bridge created an unreasonably dangerous condition of which both Tx DOT and the County were aware, and that the condition proximately caused Brown's death. While appellants do not explicitly state that Brown lacked prior knowledge of the malfunctioning lights, such lack of knowledge is implicit from a total reading of the pleadings. *See Cartwright v. MBank Corpus Christi, N.A.,* 865 S.W.2d 546, 551 (Tex.App.—1993, pet.denied)(holding that pleadings shall be construed to do substantial justice).

■■■ To establish the scope of the unreasonably dangerous condition, we address the particular characteristics and properties of the Causeway. The Causeway is narrow. There are two travel lanes in each direction, separated by a cement median barrier. The bridge rises to a level of one-hundred and nine feet above the bay. There is only a narrow shoulder alongside the traffic lanes. By its nature, the Causeway lacks adjoining space for accommodating vehicles or passengers in emergency situations. If an accident occurs on the bridge, there is little room to avoid the accident. Cars must either maintain their course or swerve onto the narrow shoulder between the driving lanes and the guardrail at the edge of the Causeway. The driver's options are limited by the constrictive nature of the roadway. Given the restricted options a driver has in such circumstances, the Causeway is more dangerous than an ordinary road when improperly lit. Presumably, the State took such factors into consideration when designing the Causeway and deciding to install the roadway lights.

Appellants alleged that, although the first part of the Causeway was lit, the lights at the accident site were not functioning. Sporadic lighting is arguably more dangerous to the average motorist than total darkness, due to the element of surprise. We find that the unexpected absence of lighting on the Causeway created an unreasonably dangerous condition.

■■■ Tx DOT and the County had actual knowledge of the hazardous condition and failed to either warn drivers or remedy the condition in a timely fashion. The record reflects that letters addressing the condition of the road lights were periodically exchanged between various officials over the course of the year preceding the accident. On November 9, 1995, Cameron County Park System Director, Kenneth Conway, wrote to Tx DOT's District Engineer, Amadeo Saenz, about "the numerous lights that were out and the serious safety hazard this presents." Conway further wrote that Tx DOT "said they would do the repairs last week. Still no repairs have been done." The State and County knew of the serious risk to public safety posed by the faulty lights almost a full year before the accident that gave rise to this case.

We find that the first two elements of governmental liability are satisfied. The absence of lighting on the Causeway created an unreasonably dangerous condition of which Tx DOT and the County had actual knowledge, yet failed to make safe.

Appellants further alleged that the Causeway lights were functioning on the mainland side, and that the lights did not fail completely until further along the bridge's span. Once a vehicle starts across the bridge, it is seemingly impossible to turn back: a cement median separates the highway. Brown was presumably unaware of the defective lighting until he was plunged into darkness at the Eastern end of the bridge. Upon entering the lighted Causeway, a motorist would reasonably expect it to be lit over its entire length. A darkened patch along the roadway presents an unexpected change in conditions resulting in surprise to the average traveler.

The final requirement necessary to establish a premise defect is proximate causation. Proximate cause requires a showing of both cause-in-fact and forseeability. *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995); *see also Wal–Mart Stores, Inc. v. Sholl*, 990 S.W.2d 412, 416 (Tex.App.—Corpus Christi 1999, no pet.).

Cause-in-fact requires a showing that the defect was a substantial factor in bringing about Brown's injuries. *See Sholl*, 990 S.W.2d at 417. Common sense dictates that Brown's chance of survival would have been substantially greater had his damaged vehicle been clearly visible. While headlights generally provide adequate light for typical nighttime driving, they serve to illuminate only a small section of the road immediately ahead. In the instant case, had the road been well-lit, Martinez would have had a greater opportunity to see the accident and take appropriate action. The abrupt darkness deprived him of any opportunity to make the necessary adjustments to nighttime driving. Instead, Martinez was likely unable to see the obstacle until he was upon it. Had the roadway been lit in accordance with his expectations, he likely could have avoided Brown's vehicle.

An incident is foreseeable where the injury is "of the type that might reasonably have been anticipated." *Sholl*, 990 S.W.2d at 417 (citing *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 551 (Tex.1985)). The government should have been aware that the unlit Causeway created an unreasonably dangerous situation. As discussed, the conditions on the Causeway created an environment in which accidents were more likely to occur. It was foreseeable that the Causeway's defective lighting could result in an accident. The decision to install the designated number of lights shows that the State realized the need for adequate illumination for safety purposes. Correspondence between Tx DOT and Cameron County officials indicates that both parties realized the conditions presented a safety threat. An evaluation dated October 20, 1995, from the contracted maintenance crew to Conway details the company's inspection of the roadway lighting system. The memo states, in part, that there was "extreme hazard due to the aged wire and connections." Moreover, a letter from Conway acknowledged the defective lights were a "serious public safety issue."

We hold that the evidence establishes a premises defect for which there is a duty to warn or make safe.[2] We therefore conclude sovereign immunity was waived in this case, and that the trial court has jurisdiction over this suit. We reverse the judgment of the trial court and remand for

---

2. As noted, we express no opinion as to the assignment of liability as between Tx DOT, the County, or others.

further proceedings in accordance with this opinion.