NUMBER 13-98-499-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


CHARLENE MILLS BROWN, ET AL., Appellants,


v.



TEXAS DEPARTMENT OF TRANSPORTATION

AND CAMERON COUNTY, Appellees.

___________________________________________________________________


On appeal from the 197th District Court


of Cameron County, Texas.


___________________________________________________________________

O P I N I O N



Before Chief Justice Seerden and Justices Yañez and

Chavez

Opinion by Justice Yañez





 In this interlocutory appeal, appellants challenge the trial court's
dismissal of their claims against appellees, Cameron County (the
County) and the Texas Department of Transportation (Tx DOT), on the
basis that the claims are barred by sovereign immunity. We reverse.

 This case resulted from an auto accident which occurred on the
Queen Isabella Causeway (the Causeway), which links South Padre
Island and the South Texas mainland. On September 14, 1996, at
approximately 3:00 a.m., Nolan Brown lost control of his truck as he
crossed the Causeway and collided with the concrete barrier that
divides the east-bound and west-bound lanes. Brown's truck
eventually came to rest on its side. The passenger in the truck, Jeff
Farrington, apparently exited through the sunroof. As Brown was
exiting, another vehicle, driven by Muncio Martinez, collided with
Brown's truck. Brown was killed in the collision. At the time of the
accident, forty-five of the one-hundred and twenty-one lights which are
intended to light the Causeway were not functioning due to a number
of problems brought on by age and corrosion.

 Brown's survivors brought suit against Martinez, the County, Tx
DOT and the contractor employed by the County to maintain the
Causeway lights. The County and Tx DOT filed pleas to the jurisdiction,
arguing that governmental immunity barred appellants' action against
them. The trial court dismissed the claims against the County and Tx
DOT and ordered the claims severed from the remaining causes of
action. Appellants appeal from this dismissal.

 Governmental entities are immune from liability except where the
legislature has waived that immunity. See Tex. Civ. Prac. & Rem. Code
Ann. §§101.021, 101.025 (Vernon 1997). Unless the government has
waived immunity, the trial court lacks subject matter jurisdiction. City
of Austin v. L.S. Ranch, Ltd., 970 S.W.2d 750, 752 (Tex. App.--Austin
1998, no pet.). Immunity is waived where the government owes a duty
of care. See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.025
(Vernon 1997); see also, Morse v. State, 905 S.W.2d 470, 474 (Tex.
App.--Beaumont 1995, no writ). A governmental entity remains
immune from liability for injuries sustained as a result of a discretionary
act. Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (Vernon 1997). If the
performance or non-performance of an act is left to the consideration of
the government, it is a discretionary act. Id. The immunity covering
discretionary acts applies even where the government has acted
negligently in making its decision. See Stanford v. State, 635 S.W.2d
581, 582 (Tex. App.--Dallas 1982, writ ref'd. n.r.e.). The installation of
roadway safety devices is discretionary. See id. Therefore, sovereign
immunity precludes a plaintiff from alleging misfeasance on the part of
the government in failing to install certain safety features, such as guard
rails or stop signs. See id.; see also, Miller v. City of Fort Worth, 893
S.W.2d 27, 33 (Tex. App.--Fort Worth 1994, pet. dism'd by agr.).


Design v. Maintenance

 Although the installation of safety devices is discretionary and
immune, governmental immunity is waived for decisions involving
structural maintenance. City of Fort Worth v. Gay, 977 S.W.2d 814,
817 (Tex. App.--Fort Worth 1998, no pet.). "Maintenance activities
undertaken at the operational level are not discretionary functions and
are not immune from liability." Id. Maintenance is the continuing
implementation of a previous policy decision and therefore is non-discretionary. McClure v. Reed, 997 S.W.2d 753, 756 (Tex. App.--Tyler
1999, no pet.). Immunity is waived where maintenance is necessary to
keep the roads free of unreasonably dangerous premises defects. See
Gay, 977 S.W.2d at 817. Consequently, there is a duty to repair
premises defects that pose an unreasonable risk of harm to travelers. 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.022 (Vernon 1997). 

 "Maintenance" is most clearly distinguished from "design" in that
maintenance refers to the preservation of existing infrastructure. See
Garza v. State, 878 S.W.2d 671, 675 (Tex. App.--Corpus Christi 1994,
no writ)(finding that maintenance involves the preservation of existing
conditions); see also Siders v. State, 970 S.W.2d 189, 193 (Tex. App.--Dallas 1998, pet. denied) (finding duty to maintain highway as
designed). In the instant case, because the government installed road
lights, maintenance of those lights is not discretionary. See Gay, 977
S.W.2d at 817. The State chose to light the Causeway and having done
so, assumed a duty to maintain the lights.(1)

 Appellants argue that the absence of lighting on the Causeway
constituted a premises defect, which was the proximate cause of Brown's
death. The absence of lighting resulted from non-functioning lights on the
existing roadway lamps, and thus was not the result of faulty design, but
rather, the failure to maintain the existing lights. 

Government Liability for Premises Defect

 We must next determine whether or not the failure of a block of
lights, arising from a lack of maintenance, is sufficient to establish a
premises defect in this case. "Premises" includes the [structure], parts
and appurtenances. Billstrom v. Memorial Med. Ctr., 598 S.W.2d 642,
646 (Tex. App.--Corpus Christi 1980, no writ). "Defect" means an
imperfection, shortcoming or want of something necessary for completion. 
See id. at 646. In the instant case, the Causeway and its appurtenances
constitute the premises, and the faulty light fixtures constitute the defect. 

 To establish governmental liability for premise defects, a plaintiff
must plead and prove that: (1) the condition is unreasonably dangerous;
(2) the government had knowledge of the defect and did not repair or warn
of the defect after a reasonable amount of time; (3) the injured party did
not have prior knowledge of the defect; and (4) the defect was the
proximate cause of the injured party's harm. See State Dept. of Highways
& Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992). We look to the
appellants' petition to determine if it sufficiently pleads facts which, if
taken as true, will support jurisdiction. Texas Ass'n of Bus. v. Texas Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). Allegations asserted in the
pleadings are taken as true and construed in favor of the pleader. City of
El Campo v. Rubio, 980 S.W.2d 943, 945 (Tex. App--Corpus Christi, 1998,
no pet.)(quoting Texas Ass'n of Bus., 852 S.W.2d at 446). 

 Appellants asserted in their petition that the premises defect on the
bridge created an unreasonably dangerous condition of which both Tx
DOT and the County were aware, and that the condition proximately
caused Brown's death. While appellants do not explicitly state that Brown
lacked prior knowledge of the malfunctioning lights, such lack of
knowledge is implicit from a total reading of the pleadings. See Cartwright
v. MBank Corpus Christi, N.A., 865 S.W.2d 546, 551 (Tex. App.--1993,
pet. denied)(holding that pleadings shall be construed to do substantial
justice).

 To establish the scope of the unreasonably dangerous condition, we
address the particular characteristics and properties of the Causeway. The
Causeway is narrow. There are two travel lanes in each direction,
separated by a cement median barrier. The bridge rises to a level of one-hundred and nine feet above the bay. There is only a narrow shoulder
alongside the traffic lanes. By its nature, the Causeway lacks adjoining
space for accommodating vehicles or passengers in emergency situations. 
If an accident occurs on the bridge, there is little room to avoid the
accident. Cars must either maintain their course or swerve onto the
narrow shoulder between the driving lanes and the guardrail at the edge
of the Causeway. The driver's options are limited by the constrictive
nature of the roadway. Given the restricted options a driver has in such
circumstances, the Causeway is more dangerous than an ordinary road
when improperly lit. Presumably, the State took such factors into
consideration when designing the Causeway and deciding to install the
roadway lights.

 Appellants alleged that, although the first part of the Causeway was
lit, the lights at the accident site were not functioning. Sporadic lighting
is arguably more dangerous to the average motorist than total darkness,
due to the element of surprise. We find that the unexpected absence of
lighting on the Causeway created an unreasonably dangerous condition. 

 Tx DOT and the County had actual knowledge of the hazardous
condition and failed to either warn drivers or remedy the condition in a
timely fashion. The record reflects that letters addressing the condition of
the road lights were periodically exchanged between various officials over
the course of the year preceding the accident. On November 9, 1995,
Cameron County Park System Director, Kenneth Conway, wrote to Tx
DOT's District Engineer, Amadeo Saenz, about "the numerous lights that
were out and the serious safety hazard this presents." Conway further
wrote that Tx DOT "said they would do the repairs last week. Still no
repairs have been done." The State and County knew of the serious risk
to public safety posed by the faulty lights almost a full year before the
accident that gave rise to this case.

 We find that the first two elements of governmental liability are
satisfied. The absence of lighting on the Causeway created an
unreasonably dangerous condition of which Tx DOT and the County had
actual knowledge, yet failed to make safe.

 Appellants further alleged that the Causeway lights were functioning
on the mainland side, and that the lights did not fail completely until
further along the bridge's span. Once a vehicle starts across the bridge,
it is seemingly impossible to turn back: a cement median separates the
highway. Brown was presumably unaware of the defective lighting until
he was plunged into darkness at the Eastern end of the bridge. Upon
entering the lighted Causeway, a motorist would reasonably expect it to
be lit over its entire length. A darkened patch along the roadway presents
an unexpected change in conditions resulting in surprise to the average
traveler.

 The final requirement necessary to establish a premise defect is
proximate causation. Proximate cause requires a showing of both cause-in-fact and forseeability. See Union Pump Co. v. Allbritton, 898 S.W.2d
773, 775 (Tex. 1995); see also Wal-Mart Stores, Inc. v. Sholl, 990 S.W.2d
412, 416 (Tex. App.--Corpus Christi 1999, no pet.).

 Cause-in-fact requires a showing that the defect was a substantial
factor in bringing about Brown's injuries. See Sholl, 990 S.W.2d at 417. 
Common sense dictates that Brown's chance of survival would have been
substantially greater had his damaged vehicle been clearly visible. While
headlights generally provide adequate light for typical nighttime driving,
they serve to illuminate only a small section of the road immediately
ahead. In the instant case, had the road been well-lit, Martinez would
have had a greater opportunity to see the accident and take appropriate
action. The abrupt darkness deprived him of any opportunity to make the
necessary adjustments to nighttime driving. Instead, Martinez was likely
unable to see the obstacle until he was upon it. Had the roadway been lit
in accordance with his expectations, he likely could have avoided Brown's
vehicle. An incident is foreseeable where the injury is "of the type that
might reasonably have been anticipated." Sholl, 990 S.W.2d at 417 (citing
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 551 (Tex.
1985)). The government should have been aware that the unlit Causeway
created an unreasonably dangerous situation. As discussed, the
conditions on the Causeway created an environment in which accidents
were more likely to occur. It was foreseeable that the Causeway's
defective lighting could result in an accident. The decision to install the
designated number of lights shows that the State realized the need for
adequate illumination for safety purposes. Correspondence between Tx
DOT and Cameron County officials indicates that both parties realized the
conditions presented a safety threat. An evaluation dated October 20,
1995, from the contracted maintenance crew to Conway details the
company's inspection of the roadway lighting system. The memo states,
in part, that there was "extreme hazard due to the aged wire and
connections." Moreover, a letter from Conway acknowledged the
defective lights were a "serious public safety issue." 

 We hold that the evidence establishes a premises defect for which
there is a duty to warn or make safe.(2) We therefore conclude sovereign
immunity was waived in this case, and that the trial court has jurisdiction
over this suit. We reverse the judgment of the trial court and remand for
further proceedings in accordance with this opinion.


 


 _______________________________________

 LINDA REYNA YAÑEZ

 Justice


Do not publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed this

the 17th day of August, 2000.



1. On September 5, 1979, the State entered into a construction and
maintenance contract with Cameron County, concerning the respective
responsibilities of the State and the County for the operation and repair of the
Causeway lights. Assignment of liability under the contract was not addressed by the
trial court, nor was it raised on appeal. Therefore, we do not reach the issue of
whether liability rests with the State, the County, or both.
2. As noted, we express no opinion as to the assignment of liability as between
Tx DOT, the County, or others.