Affirmed and Opinion filed August 15, 2006








Affirmed and Opinion filed August 15, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00664-CV

____________

 

MARISA DIMAS, Appellant

 

V.

 

THE TEXAS STATE UNIVERSITY SYSTEM,
SAM HOUSTON STATE UNIVERSITY, THE BOARD OF REGENTS OF SAM HOUSTON STATE
UNIVERSITY, BOBBY K. MARKS, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF SAM
HOUSTON STATE UNIVERSITY, & SAM HOUSTON STATE UNIVERSITY POLICE DEPARTMENT, Appellees

 



 

On Appeal from the 278th
District Court

Walker County, Texas

Trial Court Cause No. 21,305-C

 



 

O P I N I O N








In two points of error, appellant, Marisa Dimas, appeals
the granting of a plea to the jurisdiction and motion to dismiss on behalf of
the Texas State University System, Sam Houston State University, the Board of
Regents of Sam Houston State University, Bobby K. Marks, in his official
capacity as president of Sam Houston State University, and the Sam Houston
State University Police Department (hereinafter Aappellees@ or Athe University@).  We affirm.

Background

In September 1999, appellant began her undergraduate
studies at Sam Houston State University.  Around 11:00 p.m. on September 2, as
appellant was leaving the campus library, an unknown assailant dragged her
beneath a dark stairwell and sexually assaulted her at knife-point near the
Frels Office Building.  Appellant sued appellees, alleging negligence, premises
defect, breach of warranty, and violation of 42 U.S.C. ' 1983.[1]  
In her negligence claims, appellant alleged that there was inadequate security
on campus because university employees had Anegligently
implemented the campus= [sic] formulated safety policies.@  She also alleged
that they were negligent Ain their use or misuse of the light
sources in the area where [appellant] was attacked; [and] of the security
call-boxes on campus.@  In her premises liability claim,
appellant alleged that her injuries Aarose from a
condition of the real property on campus,@ and that the
university employees Afailed to use ordinary care to keep the
campus safe, properly lit, and free from criminal trespassers.@  She further
alleged that appellees were negligent in Afailing to inspect
the property for dangerous conditions . . . or to warn [appellant] of any such
defect.@  Appellant pled
the following allegedly negligent acts and omissions:

1.       Maintaining the premises with visual
obstructions behind which intruders could hide;

2.       Failing to provide adequate lighting;

3.       Failing to provide security fences;

4.       Failing to provide functional emergency
call boxes;

5.       Failing to provide adequate on-site
premises security;

6.       Failing to warn of the risk of harm;

7.       Failing
to provide a safe residential environment for [appellant].








Appellees subsequently filed a joint plea to the
jurisdiction and motion to dismiss, arguing that appellant had failed to
establish a waiver of sovereign immunity.  Appellees contended that appellant=s claims arose out
of discretionary Adesign decisions@ and Apolicy-formulating
decisions,@ for which immunity is not waived.  Appellees also
argued that the State is immune from complaints about inadequate security and
the method of providing security.

In her response to appellees= plea to the
jurisdiction, appellant elaborated that the time clocks controlling the light
sources in the area in which she was attacked were defective and that the
campus had experienced eight campus-wide power outages in the year preceding
her enrollment.  According to appellant, school officials knew of these
defects, although she did not.  Additionally, appellant asserted that the
University replaced the time clock that controlled the lighting near the Frels
Office Building just four months after the attack.  Reiterating her earlier
claims, appellant stated that Athe deficient lighting in and around the
area of the Frels Office Building created a premises defect, that the security
on campus was inadequate, and . . . that her injuries arose out of the defective
time clock at the Frels Office Building, which she contends failed to function
on September 2, 1999.@

On November 1, 2002, at the hearing on the plea to the
jurisdiction, the parties essentially reiterated their earlier arguments. 
Appellant also requested an opportunity to re-plead.  Appellees attempted to
introduce an affidavit of the campus=s electrical
foreman, Richard Sledge.[2] 
The trial court granted appellees= plea to the
jurisdiction and joint motion to dismiss on May 23, 2005. 








In her first point of error, appellant argues that the
court erred in granting the plea to the jurisdiction because: 1) appellant=s pleadings
properly allege and substantiate a premises defect cause of action; 2)
appellant pled a cause of action alleging the University=s use or misuse of
tangible property;[3]
3) appellant=s pleadings allege and substantiate that the
University negligently implemented a security-related safety policy; and 4)
appellant=s pleadings alleged negligence in the University=s undertaking of
maintenance activities, specifically the improper maintenance of campus
security lights and timers.  In her second point of error, appellant argues
that the trial court erred by not granting her the opportunity to replead.  In
one conditional cross-point of error, appellees argue that the trial court erred
in refusing to admit the affidavit of the campus=s electrical
foreman as jurisdictional evidence.

Standard of Review

A unit of state government is immune from suit and
liability unless the State consents.  Dallas Area Rapid Transit v. Whitley,
104 S.W.3d 540, 542 (Tex. 2003).  A suit against a government employee in his
official capacity is, in all respects, a suit against the governmental unit.  De
Mino v. Sheridan, 176 S.W.3d 359, 365 (Tex.
App.CHouston [1st Dist.] 2004, no pet.). 
Mere reference to the Texas Tort Claims Act in the pleadings does not establish
the State=s consent to be sued and is thus insufficient to
confer jurisdiction upon the trial court.  Tex. Dept. of Criminal Justice v.
Miller, 51 S.W.3d 583, 587 (Tex.
2001).   Governmental immunity from suit defeats subject matter jurisdiction.  Whitley,
104 S.W.3d at 542. 








          In
a suit against a governmental unit, the plaintiff must affirmatively
demonstrate the court=s jurisdiction by alleging a valid waiver
of immunity.  Id.  To determine if the plaintiff has met that burden, an
appellate court considers the facts alleged by the plaintiff and, to the extent
that it is relevant to the jurisdictional issue, the evidence submitted by the
parties.  Id.  The pleadings are to be construed in favor of the
plaintiff, and the court must look to the pleader=s intent.  Peek
v. Equip. Serv. Co. of San Antonio, 779 S.W.2d 802, 804-05 (Tex. 1989). 
Unless the petition affirmatively demonstrates that no cause of action exists
or that plaintiff's recovery is barred, the trial court must give the plaintiff
an opportunity to amend before granting a motion to dismiss or a motion for
summary judgment.  Peek, 779 S.W.2d at 805.           

Here, the parties do not dispute that appellees are
governmental units under the Texas Tort Claims Act (AAct@).  Therefore, we
will review appellant=s pleadings and jurisdictional evidence to
determine if her claims fall within a waiver of immunity.

Analysis

A.  Premises Defect

First, appellant argues that sovereign immunity is waived
because her pleadings properly allege and substantiate a premises defect cause
of action.  We disagree.  Under the Texas Tort Claims Act (AAct@), a state entity
can waive its sovereign immunity under limited circumstances.  Kerrville
State Hosp. v. Clark, 923 S.W.2d 582, 584 (Tex. 1996).  We must look to the terms of the Act to
determine the scope of its waiver.  Id.  Section 101.021(2) of the Act
provides that a state governmental unit is liable for 

personal injury and death so caused
by a condition or use of tangible personal or real property if the governmental
unit would, were it a private person, be liable to the claimant according to
Texas law.

Tex. Civ. Prac. & Rem. Code Ann. ' 101.021(2)
(Vernon 2005).  Furthermore, if a claim arises from an ordinary premises
defect, Athe governmental
unit owes to the claimant only the duty that a private person owes to a
licensee on private property, unless the claimant pays for the use of the
premises.@  Id.
' 101.022(a).

Appellant has failed to establish a waiver of immunity
based on premises liability because the alleged defect did not proximately
cause her injuries.   Rather, the actions of her attacker, not the allegedly
defective lights, were the proximate cause.  








The First Court of Appeals addressed a very similar
scenario in Trevathan v. State, 740 S.W.2d 500, 502 (Tex. App.CHouston [1st Dist.] 1987, writ denied).  In Trevathan,
plaintiffs Terry and Roseann Trevathan sued the State after Roseann was
attacked in a bath house at a state park.  Id. at 500-01.  Alleging
premises liability under Section 101.022(a), the Trevathans claimed that the
State had failed to provide adequate security, and that the State Aknew, or should
have known, that dangerous persons entered the premises after the security
guard left the premises.@  Id. at 500-02.  They also alleged
that the State=s Afailure to lock the entry gate, to provide
locks on the bath house, to provide proper lighting, and to provide adequate
patrolling@ contributed to their injuries.  Id.  The court
of appeals affirmed the trial court=s grant of summary
judgment in favor of the State.  Id. at 503.  The court stated:

The Trevathans= attempt to frame
their argument in terms of defective premises is unpersuasive.  In reaching
this conclusion, we have not overlooked the fact that the lock on the bath
house was broken or that some of the lights were out. . . . [I]t was the
conduct of the assailant that proximately caused their injury, exclusive of the
condition of the property.

Id. at 502. 
Accordingly, appellant has failed to establish a waiver of immunity based on a
premises liability theory.  See also City of San Antonio v. Butler, 131 S.W.3d 170, 180 (Tex. App.CSan Antonio 2004, pet.
denied) (noting that plaintiffs failed to state a claim for premises defect
arising from drunken patron=s behavior where patron jumped over a
railing, landed on plaintiff, and injured him).  We overrule appellant=s first point of
error.

B.  Use or Misuse of Tangible Property








Second, appellant argues that sovereign immunity is waived
because she pled a cause of action alleging the University=s use or misuse of
tangible property.  We disagree. Texas courts have consistently required a
nexus between the condition or use of property and the injury.  Whitley,
104 S.W.3d at 543; Miller,
51 S.W.3d at 588; Dallas
County Mental Health and Mental Retardation, et. al. v. Bossley, 968 S.W.2d 339, 342-43 (Tex. 1998).  This
nexus requires more than mere involvement of property; rather, the condition or
use must actually have caused the injury.  Bossley, 968 S.W.2d at 343.  Property does not cause
injury if it does no more than furnish the condition that makes the injury
possible.  Miller, 51 S.W.3d at 588; Bossley, 968 S.W.2d at 343. 

In Miller, the plaintiff=s husband, Clyde
Edwin Miller, III, became ill while incarcerated in the Texas Department of
Criminal Justice (TDCJ) facility in Huntsville.  51 S.W.3d at 585.  Miller was suffering from
nausea and severe headaches, and on-site physicians administered various
medications that alleviated his symptoms.  Id.  After fifteen days,
Miller was hospitalized at the University of Texas Medical Branch (UTMB) and
diagnosed with cryptococcal meningitis.  Id.  He died less than a month
later.  Id.  

Miller=s wife brought a negligence action against
the State, the TDCJ, and UTMB.  She alleged that her husband=s personal injury
and death were proximately caused by the defendants= misuse of
tangible property, specifically: (1) improperly administering medications that
masked Miller=s symptoms; (2) improperly reading and interpreting
fever-detecting equipment; and (3) improperly using clinic facilities and
equipment in diagnosing and treating Miller.  Id.  The TDCJ filed a plea
to the jurisdiction, alleging that Miller had failed to bring her claim within
the Act=s limited waiver
of sovereign immunity.  Id. at 586.  The trial court denied the plea to
the jurisdiction, and the First Court of Appeals affirmed.  Id.  The
supreme court reversed, holding that Miller had failed to demonstrate a waiver
of immunity under the Act.  Id. at 589.  The court reasoned that
although Miller=s treatment Amight have
furnished the condition that made the injury possible by suppressing symptoms
that TDCJ staff otherwise could have recognized as meningitis,@ the treatment
itself did not harm him, hasten his decline, or cause his death.  Id. at
588.  








Similarly, in Bossley, the family of patient Roger
Bossley filed suit after Bossley escaped from a state-operated mental hospital,
was hit by car, and died.  968 S.W.2d at 340-41.   Bossley had been expressing suicidal thoughts, so doctors
decided to transfer him to a more restrictive facility for further evaluation. 
Id. at 340.  Because patients often resisted such transfers and tried to
escape, hospital personnel followed standard procedure and locked the front
door of Bossley=s residential unit; however, a
self-locking glass door immediately inside the front door remained open.  Id. 
Bossley=s doctors
considered taking further safety precautions, but ultimately none were taken.  Id.  
The day after Bossley=s doctors ordered the transfer, technician
Angela Jones saw Bossley in the hallway.  Id.  Jones passed through the
inner doorway and left the self-locking door open behind her.  Id. 
Before unlocking the outer door, she glanced around and did not see anyone
nearby.  Id.  However, in the few seconds it took Jones to unlock the
outer door, Bossley approached her from behind, shoved her aside, and fled.  Id.
at 341.  Bossley ran about half a mile to the interstate, where he attempted to
hitchhike.  Id.  When police and hospital staff approached him, he
leaped in front of a truck and was killed.  Id.

Bossley=s parents brought negligence claims
against the hospital and several employees, alleging a waiver of immunity under
Section 101.021(2).  Id.  Specifically, they alleged that Jones=s unlocking the
outer door without first locking the inner door or determining Bossley=s whereabouts
proximately caused his death.  Id.  The trial court granted summary
judgment in favor of the defendants, but the Fifth Court of Appeals reversed,
reasoning that Athe involvement of some condition or use
of tangible property@ is sufficient to waive immunity.  Id. 
The supreme court reversed, stating that the proximate cause requirement of
Section 101.021(2) Ais more than mere involvement [of
property].@  Id. at 343.  The court reasoned:

If only involvement were required,
the waiver of immunity would be virtually unlimited, since few injuries do not
somehow involve tangible personal or real property.  Requiring only that a
condition or use of property be involved would conflict with the Act=s basic purpose of
waiving immunity only to a limited degree.

Id.  Although the
court acknowledged that the unlocked doors facilitated Bossley=s escape, it held
that Athe use and
condition of the doors were too attenuated from [Bossley=s] death to be
said to have caused it.@  Id.  








Here, the allegedly defective lights did not cause
appellant=s injuries; rather, the assailant=s acts proximately
caused her injuries.  Assuming that the timers malfunctioned, the mere
involvement of this property is not sufficient to establish a waiver of
immunity under Section 101.021(2).[4] 
See Miller, 51 S.W.3d at 589-90; Bossley,
968 S.W.2d at 343; see
also Whitley, 104 S.W.3d at 542 (holding
that plaintiff who was threatened on a public bus by another passenger and then
attacked when both exited did not establish waiver of governmental immunity
because his injuries did not arise from the use of the bus); Brown v.
Houston Indep. Sch. Dist., 123 S.W.3d 618, 619 (Tex. App.CHouston [14th Dist.] 2003, pet. denied) (holding that
plaintiff who was sexually assaulted by police officer in his patrol car did
not establish waiver of governmental immunity because her injuries did not
arise out of the use of the car).  Furthermore, although malfunctioning light
timers may have caused the area near the Frels Office Building to be dark, thus
furnishing the condition that made the attack possible, this condition does not
establish the requisite causal nexus.  See Whitley, 104 S.W.3d at 542; Miller, 51 S.W.3d at 589-90; Bossley, 968 S.W.2d at 343; Brown, 123 S.W.3d at 621.  Accordingly, we
overrule appellant=s second point of error.

C.  Negligent Implementation of a Security Policy








Third, appellant argues that sovereign immunity is waived
because her pleadings allege and substantiate that the University negligently
implemented a security-related safety policy.  We disagree.  AThe negligent
implementation of policy theory does not itself waive sovereign immunity.@  Perez v. City
of Dallas, 180 S.W.3d 906, 914 (Tex. App.CDallas 2005, no pet.).  AWaiver of immunity
must be demonstrated under some provision of the Texas Tort Claims Act before a
claim of negligent implementation of policy can be invoked.@  Id. 
Furthermore, the negligent implementation of a policy theory does not
establish  a waiver of immunity if the death or injury did not arise from the
use or condition of tangible personal property.  Id.  As stated above,
appellant has failed to establish a waiver of immunity under a premises
liability theory or a misuse of tangible personal property theory.  Therefore,
appellant=s waiver argument based on negligent implementation fails. 
See id. at 914-15 (holding that plaintiff=s claim of
negligent implementation of policy was Aunavailing@ because plaintiff
failed to demonstrate waiver of immunity under the Act and negligent
implementation claim did not arise from the use or condition of tangible
personal property).  We overrule appellant=s third point of
error.

D.  Negligent
Maintenance        

          Fourth,
appellant argues that sovereign immunity is waived because her pleadings
alleged negligence in the University=s undertaking of
maintenance activities, specifically the improper maintenance of campus
security lights and timers.  Maintenance activities undertaken at the
operational level do not constitute discretionary functions for which immunity
is waived.  City of Forth Worth v. Gay, 977 S.W.2d 814, 817 (Tex. App.CFort Worth 1998, no pet.)
(stating that city had waived immunity in slip-and-fall case where plaintiff
alleged that city failed to maintain, clean, and inspect the area where she
fell); Mitchell v. City of Dallas, 855 S.W.2d 741, 745 (Tex. App.CDallas 1993), aff=d 870 S.W.2d 21 (Tex. 1994) (holding that city
was not immune from claims based on negligent construction and maintenance of
retaining wall, where plaintiffs= son crashed his
bicycle and fell about twenty feet).  However, appellant=s waiver argument
fails because the University=s allegedly improper maintenance did not
proximately cause her injuries.  In Gay and Mitchell, for
example, the facts demonstrated that the alleged negligence proximately caused
the plaintiffs= injuries; Gay fell as she stepped into a flooded
gutter, and the Mitchells= son plunged over a rock wall.  Gay,
977 S.W.2d at 815; Mitchell,
855 S.W.2d at 744; see
also Stephen F. Austin State Univ. v. Flynn, No. 12-03-00240-CV, 2004 WL
948885, at *1, 7 (Tex.
App.CTyler 2004, pet. granted) (holding that
university was liable for negligently maintaining sprinkler system where stream
of water knocked plaintiff off her bicycle).  Here, however, as in Trevathan,
the attacker=s actions, not the allegedly negligent maintenance,
proximately caused appellant=s injuries.  See Trevathan, 740 S.W.2d at 502.  Accordingly, we
overrule appellant=s fourth point of error.








E.  Opportunity to Replead

Fifth, appellant contends that the trial court erred in
failing to grant her an opportunity to replead.  We disagree.  The trial court
need not grant the plaintiff an opportunity to amend before granting a motion
to dismiss if the petition affirmatively demonstrates that no cause of action
exists or that plaintiff's recovery is barred.  Peek, 779 S.W.2d at
805.  Here, appellant=s pleadings demonstrate the absence of
proximate cause; therefore, the court did not err in failing to grant appellant
the opportunity to replead.  We overrule appellant=s final point of
error.  

F.  Conclusion

Because we overrule all of
appellant=s points of error, we need not
address appellees= conditional cross-point.  We
affirm the trial court=s judgment.

 

 

                                                              

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Opinion filed August 15, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Guzman.

 









[1]  Appellant subsequently dismissed her claims against the university=s president and Board of Regents,
as well as her claims under 42 U.S.C. ' 1983.





[2]  According to appellees= brief, Sledge averred that he was on duty on the day of the alleged
assault and was unaware of any problems with the lighting system.  Sledge also
testified that there were no reported malfunctions of the campus lighting
system on the day of the attack, and he found no problems with the lights 
after the attack.  However, this affidavit never became an exhibit and does not
appear in the clerk=s record on appeal.





[3]  In her brief, appellant uses the phrase Anon-use@ of
property.  However, the statutory language and appellant=s arguments in her pleadings read Ause or misuse,@
and her arguments on appeal are consistent with this wording.





[4]  At the hearing, appellant=s counsel conceded that A[w]e don=t have any evidence at this point@ that the lights were out when the attack occurred.